UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EVONY CAPPS,

                          Petitioner,

                                        **No. 1:10-CV-0784(MAT)**
          -vs-                          **DECISION AND ORDER**

SABRINA KAPLAN,

                          Respondent.

_____

## I.   Introduction

    Proceeding <u>pro</u> <u>se</u>, petitioner Evony Capps ("Capps" or
"Petitioner") filed a petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. Capps is incarcerated as the result of a
judgment entered against her in Erie County Court of New York State
on February 21, 2007, following her guilty plea to one count of
first degree manslaughter (N.Y. Penal Law § 125.20(1)).

## II.  Factual Background and Procedural History

    The conviction here at issue stems from the fatal stabbing of
Arthur Boyd ("Boyd" or "the deceased") on the evening of
October 12, 2005, in front of the Shop Rite Market on Fillmore
Street in the City of Buffalo. According to an eyewitness, Capps
and Jalessa Clay ("Clay"), the girlfriend of the deceased, started
fighting, and other individuals joined in the altercation. Boyd
approached and attempted to intercede. During the melee, Boyd
sustained stab wounds to the neck and abdomen and was transported
by friends to the hospital.

Police officers who happened to be at the hospital upon Boyd's arrival spoke to one of the individuals accompanying him. This person told police that he had witnessed the incident and that a black female with blondish hair named "Ebony" had stabbed Boyd.

Based on this description of Boyd's assailant, police officers located Capps as she was walking home with one of her friends. At the police station, after waiving her rights, Capps gave a statement admitting getting involved in a fight with Clay. The girls had a "history" insofar as one of Capps' friends had "maced" the mother of one of Clay's friends. According to Capps, Clay instigated the fight by telling her she had a "smart mouth" that needed to be punched, and then proceeded to punch her in the mouth. The two young women started fighting. After being separated briefly, they "went at it again". While Capps was on top of Clay, Boyd walked up and pulled Capps off of Clay and said, "[Y]ou punched my baby's mother". Capps retorted with an expletive, Boyd punched her, and they began fighting. Boyd was on top of her when the police arrived but according to Capps, he got up and walked away. Capps denied having a knife or stabbing anyone, and stated she did not know who had been stabbed until after the police told her his name. Capps said that the guy who had been fighting her on the ground had been "fine" after he had gotten up.

Before Capps was taken to the holding center, the police advised her that Boyd had died at the hospital as a result of the

injuries he had sustained that night, and that she was going to be arrested. Capps made statements informing police of the location of the knife used in the incident.

An autopsy revealed that Boyd died of a stab wound to the neck with loss of blood. He also sustained a number of superficial cuts on the face, shoulder and upper right arm.

Capps subsequently was indicted on one count of second degree (intentional) murder and fourth degree criminal possession of a weapon (a folding knife).

On February 8, 2006, the parties appeared before Erie County Court Judge Timothy J. Drury for a Wade/Huntley hearing. The prosecutor requested an adjournment to continue further plea discussions.

The parties returned to court on November 8, 2006. The prosecutor indicated that an offer to plead guilty to one count of first degree manslaughter had been extended to Capps. Noting that Capps, "ha[d] been somewhat helpful, at least through a family member," at a recently concluded trial, Judge Drury stated that if Capps accepted the plea, he would cap the sentence at 14 or 15 years determinate, with 5 years of post-release supervision.

On November 29, 2006, the parties appeared before Judge Drury, and Capps entered a plea of guilty to one count of first degree manslaughter in full satisfaction of the indictment.

On February 21, 2007, Capps appeared for sentencing before Erie County Court Judge Sheila DiTullio.[1] In light of the sentence cap articulated by Judge Drury in November 2007, the prosecutor urged imposition of a 15-year determinate sentence, and defense counsel requested a sentence of 14 years. Judge DiTullio sentenced Capps to 15 years, determinate, plus 5 years of post-release supervision.

Through new counsel, Capps appealed her conviction to the Appellate Division, Fourth Department, of New York State Supreme Court, arguing that her appellate rights waiver did not preclude her challenge to the severity of the sentence, and that the trial court should have afforded her youthful offender status. The Appellate Division unanimously affirmed the conviction on June 5, 2009. People v. Capps, 63 A.D.3d 1632 (4th Dep't 2009). The Appellate Division held that Capps' appellate rights waiver was valid and encompassed her sentencing challenge as well as her contention that the County Court should have granted youthful offender status. In any event, the Appellate Division held, Capps failed to preserve the latter contention because she did not request youthful offender status during plea proceedings or at sentencing. The New York Court of Appeals denied leave to appeal. People v. Capps, 13 N.Y.3d 795 (2009).

---

[1]

Judge Drury left the Erie County Court bench in 2007, after being elected to the position of justice on the Erie County Supreme Court.

On September 21, 2010, Capps filed the instant petition, asserting the following grounds for relief: (1) her appellate rights waiver was invalid and did not preclude her challenge to the harshness of her sentence; (2) her conviction was obtained by an unknowing, unlawful and involuntary guilty plea because the trial court should have afforded her youthful offender status; and (3) trial counsel was ineffective in failing to preserve issues for appeal.

On initial screening, and interpreting the petition's allegations to raise the strongest arguments they suggested, the Court (Siragusa, D.J.) determined that the petition appeared to contain one unexhausted claim, namely, that trial counsel was ineffective in failing to preserve the youthful offender status issue for appellate review. At Capps' request, the petition was stayed so that she could return to state court and exhaust her ineffective assistance claim.

Capps filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in Erie County Court asserting that trial counsel was ineffective in failing to seek youthful offender status, which rendered the issue unreviewable on appeal; and that the trial court should have, on its own motion, granted youthful offender status to Capps at sentencing.

On December 31, 2013, Judge DiTullio issued a decision and order denying Capps' motion to vacate. Judge DiTullio found that counsel provided competent representation and successfully negotiated a plea agreement whereby Capps, facing a potential life sentence, was allowed to plead to a reduced charge and receive significantly less prison time. Furthermore, because she would not have granted youthful offender status given the facts and circumstances of Capps' crime, Judge DiTullio found that counsel was not ineffective for failing to make a motion with little to no chance of success. With regard to ground two of Capps' motion, Judge DiTullio found that she did not abuse her discretion in declining to consider youthful offender treatment.

In response to a February 28, 2014 request from this Court for a status update, the Erie County District Attorney's Office filed a letter on March 21, 2014, explaining that Capps attempted to file a motion for leave to appeal the denial of her C.P.L. § 440.10 motion with the Appellate Division, Fourth Department, on February 3, 2014. However, her papers were returned to her as improperly filed.

This Court's Pro Se Office contacted the Office of the Clerk of the Appellate Division, Fourth Department and was advised that Capps had made no attempts to re-file the motion for leave to appeal. As a result, an order was entered lifting the stay of this habeas proceeding. Capps has not requested further time to attempt

to re-file her leave application or objected to the lifting of the stay.

Respondent filed an amended memorandum of law addressing Capps' ineffective assistance of trial counsel claim. Capps did not file a reply brief.

For the reasons set forth below, the petition is dismissed.

## III.  Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended, a court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. See 28 U.S.C. § 2254(b)(1)(A), (2). The exhaustion requirement "mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition." Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam) (citation omitted). Respondent argues that Petitioner's second and third claims are unexhausted.

With regard to Petitioner's second claim, that her plea was involuntary because the trial court did not afford her youthful offender status, Respondent notes that Petitioner failed to move to vacate her guilty plea before sentencing and failed to argue on direct appeal that her plea was not knowing, voluntary and intelligent. Petitioner did not seek a stay of the petition with regard to this claim, most likely because the judge who performed

the initial screening did not notify Petitioner that the claim appeared to be unexhausted.

The Court agrees with Respondent that the claim was not raised in state court in any procedural vehicle. However, the claim does not remain unexhausted. Instead, it must be "deemed exhausted" because Petitioner no longer has "remedies available" in state court under 28 U.S.C. § 2254(b). Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (citations omitted). First, Capps has already completed her direct appeal. By statute, New York law used to provide for only a single application for direct review. Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir. 2000) (relying on former New York Rules for the Court of Appeals § 500.10(a) (discussing leave applications for criminal appeals)). Section 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. Although Rule 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009) (noting that both N.Y. R. Ct. § 500.20(d) and N.Y. Crim. Proc. Law § 460.10(5) provide a 30-day window for any such application to be

-8-

filed; "this time limit would be meaningless were multiple applications permitted"); accord, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (collecting cases). In addition, § 500.20(a)(2) provides that the leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available[.]" N.Y. R. CT. § 500.20(a)(2).

Second, Capps cannot seek collateral review of her guilty plea claim. See N.Y. CRIM. PROC. LAW § 440.10(2)(c) (barring collateral review if claim could have been raised on direct review but was not). In this case, "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted Capps to raise the claim regarding the voluntariness of her guilty plea on direct appeal. See Bossett, 41 F.3d at 828.

Because it would be fruitless to require Capps to pursue this claim in state court, it is deemed exhausted. See id. However, these same procedural defaults prevent the Court from addressing the claim's merits unless Petitioner shows cause for the default and resultant prejudice, Coleman v. Thompson, 501 U.S. 722, 749–50 (1991), or that a fundamental miscarriage of justice would occur if the the Court declines to consider the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

Capps has not attempted to show cause or prejudice, or a fundamental miscarriage of justice. Although Capps does make an

ineffective assistance of counsel claim, it concerns only trial counsel, not appellate counsel. It thus does not explain her failure to raise the pertinent issue on appeal, and cannot provide "cause" for defaulting the claim. See Bossett, 41 F.3d at 829. Accordingly, Petitioner's claim regarding the voluntariness of her guilty plea is dismissed without reaching the merits.

With regard to Petitioner's third claim asserting trial counsel's ineffectiveness, Respondent argues that by failing to appeal the denial of her C.P.L. § 440.10 motion, Capps has not fulfilled the exhaustion requirement. See Pesina, 913 F.2d at 54 ("[B]y failing to appeal the denial of his Section 440.10 motion, [the petitioner] has not fulfilled this requirement with respect to his ineffective assistance claim."). Here, Capps did attempt to file an application to appeal but her papers were returned to her as "improperly filed". Respondent did not indicate why the Appellate Division found the papers to be improperly filed, and did not provide the Court with a copy of the Appellate Division's correspondence.

There is a 30-day time-limit for appealing denials of § 440.10 motions. See N.Y. CRIM. PROC. LAW § 460.10(4)(a) ("Within thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application pursuant to section 460.15 for a certificate granting leave to appeal to the intermediate appellate court"). Based on the date of the C.P.L.

§ 440.10 decision (December 31, 2013) and the date of Capps'
application for leave to appeal (February 3, 2014),[2] the Court
surmises that the application was found to be "improperly filed"
because it was untimely. However, the Court cannot say this for
certain due to the incomplete record received from Respondent.
Because the 30-day time-limit in C.P.L. § 460.10(4)(a) has long
since passed, it seems that Capps would face a procedural bar if
she were attempt to re-file her notice of appeal, and therefore
that the claim should be deemed exhausted.

However, there is Second Circuit precedent that holds to the
contrary. See Pesina, 913 F.2d at 54. In Pesina, the Second Circuit
rejected the argument that because the statutory time limit for
seeking leave to appeal the denial of a C.P.L. § 440.10 motion had
passed, the petitioner had in fact exhausted the claims in that
motion. The Second Circuit stated that regardless of how unlikely
it was that the petitioner would have his ineffective assistance
claim held to be procedurally barred by a state court, it had "no
authority to declare as a matter of state law that an appeal from
the denial of his original Section 440.10 motion is unavailable or
that he cannot raise the ineffective assistance claim in a new
Section 440.10 action." Pesina, 913 F.2d at 54. Thus, under Pesina,
which has not been overruled or abrogated by the Second Circuit,

---

[2]

See Letter dated March 10, 2014, from Respondent's Attorney to
the Court (Dkt #14).

the Court must treat the ineffective assistance of trial counsel claim as unexhausted.[3] See Priester v. Senkowski, No. 01CIV.3441(LMM)(GWG), 2002 WL 1448303, at *7 (S.D.N.Y. July 3, 2002) (applying Pesina to similar situation, but noting that case has been undermined by later Supreme Court authority).

The habeas statute, as amended, now permits a district court to deny (but not grant) a petition containing unexhausted claims on the merits. See 28 U.S.C. § 2254(b)(2). The statute does not articulate a standard for addressing such unexhausted claims, and neither the Supreme Court nor the Second Circuit has established one. Among the district courts in this Circuit, the various formulations share "the common thread of disposing of unexhausted claims that are unquestionably meritless." Keating v. N.Y., 708 F. Supp.2d 292, 299 n. 11 (E.D.N.Y. 2010) (citing Williams v. Artus, 691 F. Supp.2d 515, 526-27 (S.D.N.Y. 2010) (relying upon § 2254(b)(2) where unexhausted claims were "plainly meritless"); Robinson v. Phillips, No. 04-CV-3446 (FB), 2009 WL 3459479, at *1 (E.D.N.Y. Oct.23, 2009) (relying upon § 2254(b)(2) where unexhausted claims were "patently frivolous")). Here, as discussed further below, the unexhausted claim is plainly and unquestionably without merit. Therefore, the Court finds that it is appropriate to

---

[3]
Furthermore, it is possible that Capps could bring another C.P.L. § 440.10 motion and have her claims considered on the merits by the County Court. See Pesina, 913 F.2d at 54.

deny the entire petition on the merits under the authority of
28 U.S.C. § 2254(b)(2).[4]

## IV.  Discussion

### A.   Validity of Appellate Rights Waiver

Capps asserts that her waiver of appellate rights was invalid
and insufficient to preclude review of her sentence as harsh and
excessive. Petitioner has not cited, and the Court is not aware of,
any federal precedent standing for the proposition that specific
language must be used by the trial judge in apprising a defendant
pleading guilty of the individual rights relinquished. Roland v.
Rivera, No. 06-CV-6543(VEB)(DGL), 2011 WL 1343142, at *4 (W.D.N.Y.
Jan. 6, 2011) (rejecting as not cognizable petitioner's claim that
the trial court failed to conduct a proper inquiry into his
understanding of the waiver of appellate rights) (citing Salaam v.
Giambruno, 559 F. Supp.2d 292 (W.D.N.Y. 2008); Nicholas v. Smith,
No. 02 CV 6411(ARR), 2007 WL 1213417, at *10-11 (E.D.N.Y. Apr. 24,
2007)). The Court need not consider whether Petitioner has a viable
federal constitutional claim regarding the alleged deficiency in
her appellate rights waiver, because, as discussed below, her
underlying sentencing claim is not cognizable on habeas review.

Here, Capps pleaded guilty to one count of first degree
manslaughter, a class B violent felony which carried with it a

---

[4]

Capps did not seek an extension of the stay to either re-file
her leave application or file a second C.P.L. § 440.10 motion.

potential maximum determinate sentence of 25 years plus a mandatory term of up to 5 years of post-release supervision. See N.Y. PENAL LAW § § 125.20(1), 70.02(3)(a). Petitioner was promised a sentence of either 14 or 15 years determinate, plus a 5-year term of post-release supervision. She ultimately was sentenced to a 15-year determinate term plus 5 years of post-release supervision. It is well settled that no federal constitutional issue cognizable on habeas review is presented where, as here, a habeas petitioner's sentence is within the statutorily prescribed range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989), cert. denied, 493 U.S. 837 (1989)).

**B.     Ineffective Assistance of Trial Counsel**

Capps asserts, as she did in support of her C.P.L. § 440.10 motion, that trial counsel was ineffective in failing to seek youthful offender treatment at the plea proceeding or sentencing, thereby failing to preserve the issue for appellate review.

To demonstrate a violation of her Sixth Amendment right to the effective assistance of counsel, a petitioner must show that her attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to her as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process"

-14-

that the process "cannot be relied on as having produced a just
result[.]" Id. at 686. As to the second prong, the petitioner "must
show that there is a reasonable probability that, but for counsel's
unprofessional" conduct, the result of the trial would have been
different. Id. at 694. "'[T]here is no reason for a court deciding
an ineffective assistance claim . . . to address both components of
the inquiry if the defendant makes an insufficient showing on
one.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005)
(alterations in original) (quoting Strickland, 466 U.S. at 697).

Here, the Appellate Division's primary reason for not
considering Petitioner's claim regarding youthful offender status
was that such a contention was encompassed by her valid waiver of
appellate rights, which had nothing to do with trial counsel's
performance. The lack of preservation by trial counsel simply was
an alternative basis for the Appellate Division to decline to
consider the youthful offender status claim. Thus, Petitioner has
not shown a reasonable probability that the outcome of her appeal
would have been different but for trial counsel's error. As a
result, she meet the prejudice prong of Strickland.

Moreover, Petitioner has not established Strickland's
deficient performance prong. In denying the C.P.L. § 440.10 motion,
Judge DiTullio stated that she would not have granted youthful
offender treatment even had trial counsel made such a request. It
is well-settled that the "[f]ailure to make a meritless argument

-15-

does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000).

### C.   Failure to Grant Petitioner Youthful Offender Status

To the extent Petitioner's second ground for relief can be read to assert a stand-alone claim of error by the trial court in not according her youthful offender status sua sponte, such a claim is not cognizable on Federal habeas review. Under New York law, "[t]he decision whether to grant youthful offender status to an eligible youth generally 'lies within the sound discretion of the sentencing court.'" People v. Victor J., 283 A.D.2d 205, 206, 724 N.Y.S.2d 162 (1st Dep't 2001) (citation omitted). The Second Circuit has explained that "[t]he granting or denial of youthful offender treatment is analogous to that of sentencing where courts have wide discretion even though there are few or no statutory guidelines for the exercise of such discretion." United States ex rel. Frasier v. Casscles, 531 F.2d 645, 647 (2d Cir. 1976) (citations omitted). If the reviewing court determines that sentencing "judge has exercised has exercised [her] discretion within statutory limits, appellate review is at an end." Id. (citations omitted). As discussed above, Capps' sentence is well-within the statutorily permitted range. Therefore, her claim regarding the failure of the state court to accord her youthful offender status does not present a constitutional issue cognizable

on federal habeas review. <u>Accord</u>  <u>Murphy v. Artus</u>, 07 Civ. 9468, 2009 WL 855892, at *7 (S.D.N.Y. Apr. 1, 2009) (citing <u>Auyeung v. David</u>, 00 Civ. 1353, 2000 WL 1877036, at *3 (S.D.N.Y. Dec. 26, 2000) (citing <u>Frasier</u>, 531 F.2d at 647-48)).

## V.   Conclusion

For the reasons discussed above, the petition (Dkt. #1) is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          November 21, 2014

-17-